# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: April 16, 2015

| | |
|---|---|
| * * * * * * * * * * * * * * | **PUBLISHED** |
| MEHABUB BHUIYAN, * | |
| * | No. 05-1269V |
| Petitioner, * | |
| * | Special Master Hamilton-Fieldman |
| v. * | |
| * | Attorneys' Fees and Costs; Contested; |
| * | Expert Fees – Disputed Hourly Rate; Expert |
| SECRETARY OF HEALTH * | Fees – Disputed Number of Hours; Expert |
| AND HUMAN SERVICES, * | Fees – Treating, Not Retained; Expert Costs. |
| * | |
| Respondent. * | |
| * * * * * * * * * * * * * * | |

<u>John F. McHugh</u>, Law Office of John McHugh, New York, NY, for Petitioner.
<u>Julia McInerny</u>, U.S. Department of Justice, Washington, DC, for Respondent.

## <u>DECISION AWARDING ATTORNEYS' FEES AND COSTS</u>[1]

On December 8, 2005, Mehabub Bhuiyan ("Petitioner") filed a petition pursuant to the National Vaccine Injury Compensation Program (the "Program").[2] 42 U.S.C. §§ 300aa-10-34 (2006). Petitioner alleged that he suffered from an anaphylactic reaction and developed psychosis as a result of the hepatitis B vaccine he received on January 23, 2003.[3] Petition ("Pet.") at 1. This matter is before

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986 (the "Vaccine Act"), Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. § 300aa-10-34 (2006). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

[3] The petition was initially filed by Khudeza Begum, Petitioner's mother, when Petitioner was a minor. The caption was later amended at Petitioner's request. *See* Order, dated February 18, 2006.

the undersigned on Petitioner's Amended Application for the Payment of Fees and Expenses, filed on April 10, 2014. For the reasons stated herein, the motion is **GRANTED IN PART**.

## I.   BACKGROUND

On January 11, 2013, the parties filed a Stipulation regarding entitlement to compensation for Petitioner's allegedly vaccine-caused injury. Stipulation ¶ 8. Chief Special Master Campbell-Smith, the previously-assigned special master, rendered a Decision approving the requested amount for Petitioner's compensation under 42 U.S.C. § 300aa-15(a). Decision, January 11, 2013. On February 12, 2013, judgment was entered awarding $100,000 in compensation to Petitioner under 42 U.S.C. § 300aa-15(a).

On September 5, 2013,[4] Petitioner filed an Application for the Payment of Fees and Expenses ("Pet. Mot. Costs"), and an amended on April 10, 2014 ("Pet. Am. Mot. Costs"). Petitioner notes in the amended motion that the parties had agreed to settle the attorneys' fee portion of the total fees and costs for $95,000, but that the parties could not agree on the remaining portion of the attorneys' costs or on Petitioner's costs, both of which pertain mostly to the reimbursement of expert fees.[5] Pet. Am. Mot. Costs at 1. Petitioner requests $26,371.80 in attorneys' costs, and $3,220.25 in personal costs.[6] Petitioner's Exhibit ("Pet. Ex.") 31 and 32.

Respondent filed a Response to the Motion for Attorneys' Fees and Costs ("Resp. Obj. Costs") on May 15, 2014, objecting to Petitioner's request for attorneys' costs and personal costs because these costs were unreasonable, unsupported, and undocumented. Resp. Obj. Costs at 1. Petitioner then filed a Reply to the Respondent's Response ("Pet. Rep. to Resp.") on May 27, 2014. Pet. Rep. to Resp.

In particular, the Respondent objects to the following costs:

---

[4] Pursuant to Vaccine Rule 13, attorneys' fees and costs are to be requested within six months of judgment. On August 8, 2013, Chief Special Master Campbell-Smith granted Petitioner's Motion to Amend Schedule, setting a new deadline of September 7, 2013 for Petitioner's Motion for Attorneys' Fees and Costs. Order, August 8, 2013.

[5] Petitioner's summary of attorney costs and summary of personal costs contained several calculation errors, which Petitioner's counsel tried to correct in a subsequent filing. Pet. Memo. Supp. Costs at 12. However, this subsequent filing also contained calculation errors. *Id.* For these reasons, the undersigned has closely scrutinized Petitioner's requested costs. *See infra* parts III(6) and IV(2). A special master need not engage in a line-by-line analysis of requested costs. *See Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

[6] Due to numerous calculation errors, Petitioner's counsel never expressly requests these exact amounts. In sum, Petitioner's counsel seeks reimbursement of $1,045.00 for medical records, $896.43 for travel, $1,871.60 for court reporting, $175.00 for attorney fees for Mr. Frederic Abramson, $5,200.00 for Kincaid Vocational Services, $3,300 for Dr. Daniel Greenfield, $11,600.00 for Dr. Marcel Kinsbourne, $543.67 for copying services, $839.45 for process service, and $900.65 for Federal Express. Petitioner seeks personal costs of $785.00 for Mr. Buckner and $2,460.85 for Dr. Herivaux.

### 1.  Dr. Kinsbourne

Respondent objects to reimbursement of $11,600.00 for retaining Dr. Marcel Kinsbourne as a medical expert. Pet. Ex. 31; Pet. Memorandum in further support of application for reimbursement of costs ("Pet. Memo. Supp. Costs"), filed February 6, 2014, at 12; Pet. Ex. 31-1 at 26–27. Specifically, Respondent objects to the total number of hours expended by Dr. Kinsbourne and to Dr. Kinsbourne's hourly rate of $500. Respondent argues that Dr. Kinsbourne's fees and costs should not be reimbursed because Dr. Kinsbourne had requested a psychiatric diagnosis before offering his own opinion, but such a diagnosis was never provided. Resp. Obj. Costs at 6–8.

Petitioner counters that, although Dr. Kinsbourne had initially indicated a psychiatric diagnosis would be helpful to inform his ultimate opinion as to causation, the lack of such a diagnosis did not render him unable to issue his expert opinion. Pet. Rep. to Resp. at 3.  Petitioner further argues that Dr. Kinsbourne's hourly rate is reasonable because of his medical knowledge and familiarity with the Program. Pet. Memo. Supp. Costs at 6.

### 2.  Mr. Buckner

Respondent objects to reimbursement of $785.00 in costs incurred personally by Petitioner for the services of George Buckner, a clinical social worker with certification in psychoanalysis and psychotherapy, who submitted a report in this case. Pet. Ex. 32; Pet. Memo. Supp. Costs at 10-12. Respondent argues that the invoices from Mr. Buckner reflect "Individual Psychotherapy," a past, out-of-pocket expense that appears to relate to Petitioner's medical treatment, and thus should properly be considered a part of the Petitioner's compensation award. Resp. Obj. Costs at 10. Petitioner counters that Mr. Buckner was not retained to treat Petitioner, but rather to advise counsel on Petitioner's mental health issues. Pet. Rep. to Resp. at 6.

### 3.  Dr. Herivaux

Respondent objects to reimbursement of $2,435.85 for costs incurred by Petitioner as a result of retaining Dr. James Herivaux, a psychiatrist, for a second opinion. Pet. Ex. 32. Petitioner has submitted no invoice or medical records in conjunction with the visits with Dr. Herivaux. Pet. Rep. to Resp. at 10. Respondent objects on the basis that the costs are entirely undocumented and therefore cannot be compensated. Resp. Obj. Costs at 10. Petitioner explains that Dr. Herivaux was retained as a result of Dr. Kinsbourne's request for a psychiatric diagnosis, and Petitioner's counsel made repeated but unsuccessful attempts to contact Dr. Herivaux to obtain documentation of these visits. Pet. Rep. to Resp. at 8.

### 4.  Dr. Greenfield

Respondent objects to reimbursement of $3,300.00 for the costs associated with retaining Dr. Daniel Greenfield as a medical expert. Pet. Ex. 31; Pet. Ex. 31-1 at 25. Respondent notes that Dr. Greenfield was not identified as an expert witness, and that his records were never filed; thus, Respondent argues, his role in the case is unclear. Resp. Obj. Costs at 8–9. Respondent further argues that there is no evidence to support the reasonableness of the hours expended by Dr. Greenfield, or to support Dr. Greenfield's $400 hourly rate. *Id.*

Dr. Greenfield was recommended to Petitioner's counsel by the New Jersey Public Defenders Office's Division on Mental Health due to his experience testifying as an expert witness on matters of mental health. Pet. Rep. to Resp. at 6-7. Petitioner argues that because Petitioner's non-compliance with prescriptions would factor into his long-term needs, a medical doctor would need to evaluate Petitioner to determine what these long-term needs would entail, and Dr. Greenfield was retained for this purpose. *Id.* Dr. Greenfield did not author an expert report because he was unable to reach Petitioner and consult with him directly. Pet. Rep. to Resp. at 7–8; *see* also Resp. Obj. Costs at 9; Pet. Memo Supp. Costs at 11. Rather than work with Dr. Greenfield, Petitioner chose to treat with Dr. Herivaux. Pet. Memo. Supp. Costs at 11–12.

### 5. Kincaid Vocational Services

Respondent objects to reimbursement of $5,200.00 for the services of Kincaid Vocational & Rehabilitation Services ("Kincaid") in evaluating Petitioner's ability to earn a living. Pet. Ex. 31; Pet. Ex. 31-1 at 24. Respondent argues that it was unreasonable for Petitioner to retain a vocational expert prior to a determination of entitlement, and prior to his retention of a medical expert willing to opine on Petitioner's disabilities. Resp. Obj. Costs at 9. Petitioner maintains that this cost was germane to settlement discussions as it helped establish his future earning capacity. Pet. Rep. to Resp. at 5. While Petitioner recognizes that Kincaid was retained prior to an entitlement determination, he argues that Kincaid was utilized while the parties were engaged in settlement discussions and that the costs associated with the vocational services were necessary to determine a reasonable settlement amount. Pet. Rep. to Resp. at 5.

### 6. Miscellaneous Costs

Respondent objects to reimbursement of $900.65 worth of Federal Express ("FedEx") expenses incurred to file documents and send correspondence in the case, as well as $70.40 for a meal while in Washington, D.C. for a settlement conference in the case. Pet. Ex. 31-2; Pet. Ex. 31-1 at 13. Respondent objected to the unnecessary use of FedEx for all case documents, and to the cost of the meal (which included alcohol) as unreasonable. Resp. Obj. Costs at 10–11. Petitioner justifies the FedEx expenses as necessary due to counsel's law office being served only by a small satellite post office which, if utilized, would have resulted in higher costs due to the time staff would have had to remain in line. Pet. Rep. to Resp. at 8–9.

## II.     APPLICABLE LEGAL STANDARDS

Petitioners who successfully demonstrate their entitlement to compensation for Vaccine Act claims are entitled to an award of reasonable attorneys' fees and costs for that litigation. *See* § 300aa-15(e)(1). An unsuccessful petitioner may also be awarded attorneys' fees and litigation costs if petitioner's claim was (a) filed in good faith and (b) with a reasonable basis. *Id.*

Fees and costs must both be reasonable. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Oct. 30, 1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for

reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs."), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

Whether a petitioner was successful or not, special masters have the discretion to determine what constitutes a reasonable amount for fees and costs. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *Saunders v. Sec'y of Health and Human Servs.*, No. 90-826V, 1992 WL 700268 at *1 (Cl. Ct. Spec. Mstr. May 26, 1992), *aff'd*, 26 Cl. Ct. 1221 (1992), *aff'd*, 25 F.3d 1031 (Fed. Cir. 1994); *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 31 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994); *Friedman v. Sec'y of Health & Human Servs.*, 94 Fed. Cl. 323, 327-28 (Fed. Cl. 2010); *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372, 1377 (Fed. Cir. 2010). Ultimately, it is the petitioner's burden to demonstrate that the requested attorneys' fees are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 426 (1983); *see also Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 215 (2009); *Rupert v. Sec'y of Health & Human Servs.*, 52 Fed. Cl. 684, 686 (2002); *Wilcox v. Sec'y of Health & Human Servs.*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). The same burden applies to justifying requests for an award of costs. *Perreira*, 27 Fed. Cl. at 34.

In reviewing a fees and costs application, the special master need not engage in a line-by-line analysis of the application. *See Hocraffer v. Sec'y of Health & Human Servs.*, 99-533V, 2011 WL 6292218 at *13 (Fed. Cl. 2011). Special masters are afforded wide discretion in determining the reasonableness of both attorneys' fees and incurred costs. *Morse v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 683, 687 (Nov. 10, 2009). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests …. [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993).

## III.   DISCUSSION

Petitioner has satisfied the requirements for an award of litigation costs in part, as explained below:

### 1.  Dr. Kinsbourne

Petitioner has submitted an invoice from Dr. Kinsbourne showing that he spent 23.2 hours working on this case at a rate of $500 per hour, for a total of $11,600.  Pet. Ex. 31-1 at 26–27. Respondent objects to Dr. Kinsbourne's $500.00 hourly rate and to the number of hours he has expended in this case. Resp. Obj. Fee App. at 7.

Dr. Kinsbourne frequently testifies and submits expert opinions in the Program. Although Dr. Kinsbourne has, on a few occasions, been awarded an hourly rate of $500, *see Simon v. Sec'y of Health & Human Servs.*, 2008 WL 623833 at *6–*7 (Fed. Cl. Feb. 21, 2008), some special masters have reduced his requested hourly rate to $300. *See, e.g., Stone v. Sec'y of Health & Human Servs.*, No. 90-1041, 2010 WL 3790297, at *6 (Fed. Cl. Spec. Mstr. Sept. 9, 2010); *Hammitt v. Sec'y of Health & Human Servs.*, No. 07-170V, 2011 WL 1827221 at *7 (Fed. Cl. Spec. Mstr. Apr. 7, 2011); *Adams v. Sec'y of Health & Human Servs.*, No. 01-267V, 2008 WL 2221852, at *2 (Fed. Cl. Spec. Mstr. Apr. 30, 2008),

Here, Dr. Kinsbourne submitted an expert report on Petitioner's mental and emotional states. Pet. Ex. 21. Dr. Kinsbourne indicated his opinion would be more useful if he were provided with the Petitioner's psychiatric diagnosis, and an order dated December 19, 2011 granted an extension of time for Dr. Kinsbourne's expert report for this reason. Order, Dec. 19, 2011. Dr. Kinsbourne was never provided a psychiatric diagnosis, but he nevertheless filed his expert report a week after the extension was granted, on December 27, 2011. Pet. Ex. 21. The undersigned is not satisfied that the report demonstrates either medical complexity or expertise sufficient to support the requested $500 per hour rate in this case. For these reasons, Dr. Kinsbourne is awarded $400 per hour for his expert work.

Special masters have also reimbursed Dr. Kinsbourne at varying hourly rates depending on the nature of the services he has provided. In *DiMatteo v. Secretary of Health and Human Services*, for example, Dr. Kinsbourne was awarded $400 per hour for his expert services and $300 per hour for time expended for non-expert services. *DiMatteo v. Sec'y of Health & Human Servs.*, No. 10-566V, 2014 WL 1509320, at *9 (Fed. Cl. Spec. Mstr. March 27, 2014). The special master in *Simon v. Secretary of Health and Human Services* also awarded different rates to Dr. Kinsbourne, reasoning that the higher expert rate was "deserved only for those hours spent as an expert," not for medical research or consulting with the attorney. *Simon*, 2008 WL 623833, at *7. The special master determined that Dr. Kinsbourne should be awarded only $300 per hour when he was actually working in a consultant capacity—performing tasks such as "consulting on strategy, selection of experts, or trial tactics." *Id.* at *8. In the past, Dr. Kinsbourne has charged the lesser rate of $300 per hour for emails and phone calls. *See Stone*, 2010 WL 3790297 at *5-6.

In the instant case, the parties ultimately settled; therefore, the hours billed by Dr. Kinsbourne do not include time spent testifying at hearing but instead reflect time spent reviewing the record, preparing his expert report, retrieving medical literature, conferencing and emailing. Specifically, Dr. Kinsbourne spent 2.7 hours total on "Email" and 1.75 hours total on "Teleconference." Pet. Ex. 31-1 at 26–27. The undersigned has determined that "Email" and "Teleconference" is not expert work and will therefore be compensated at the lesser rate of $300 per hour, for a total of $1,335.00.

Separate from Dr. Kinsbourne's hourly rate, special masters have also reduced the number of compensable hours billed by Dr. Kinsbourne. In *DiMatteo*, Dr. Kinsbourne's compensation was adjusted in part due to the fact he had billed over 20 hours in a case in which he had not yet testified; in *Simon*, however, the special master found it reasonable that Dr. Kinsbourne billed 24 hours in a case in which he testified at trial. *DiMatteo*, 2014 WL 1509320 at *9; *Simon*, 2008 WL 623833 at *8. Here, Dr. Kinsbourne billed 18.75 total hours on reviewing records and preparing his report. Pet. Ex. 31-1 at 26-27. Further, Dr. Kinsbourne's expert report was prepared without reference to the psychiatric diagnosis he had previously stated was necessary to the formulation of his opinion. For this reason, the number of compensable hours for Dr. Kinsbourne's "Review of medical literature and preparation of report" is reduced from 18.75 hours to 14.75 hours. These hours will be compensated at the $400 per hour rate, for a total of $5,900.00.

In sum, Dr. Kinsbourne will be awarded $7,235.00, resulting in a deduction of $4,365.00 from Petitioner's Motion for Costs.

**2. Mr. Buckner**

Petitioner seeks $785.00 in costs for a licensed social worker, George Buckner. Pet. Ex. 32. Petitioner has submitted an affidavit certifying he traveled to Mr. Buckner's office via public transportation ($25) as well as invoices for the five visits ($150 each, plus one bounced check fee of $10). *Id*. The invoices indicate that Petitioner visited Mr. Buckner for individual psychotherapy sessions. *Id*. Mr. Buckner filed a report in this case, summarizing the effects Petitioner experienced post-vaccination, as well Mr. Buckner's impressions of Petitioner's psychological symptoms. Report of George Buckner, August 11, 2009.

The undersigned finds that Mr. Buckner provided Petitioner with medical care and therapy. Under 42 U.S.C. § 300aa-15(a)(1)(B) of the Vaccine Act, certain expenses for the "diagnosis, medical or other remedial care, … emotional or behavioral therapy" are considered a part of the compensation awarded to a petitioner. The costs under § 300aa-15(e) for reasonable attorneys' fees and other costs incurred during the course of the case are not the same as the costs compensable under § 300aa-15(a). The undersigned agrees with Respondent that the costs expended with respect to Petitioner's psychotherapy visits with Mr. Buckner were compensated as part of the amount already awarded to Petitioner, and were not costs incurred as a result of litigation. For these reasons, the undersigned declines to compensate Petitioner for the costs associated with Mr. Buckner.

### 3. Dr. Herivaux

Petitioner seeks costs for a psychiatrist, Dr. Herivaux, for 11 visits and a prescription, for a total of $2,435.85. In support of these costs, Petitioner has submitted an affidavit certifying that he visited Dr. Herivaux 11 times (at $200 per visit) and received a prescription from Dr. Herivaux (at $135) as well as the costs of traveling by car to see Dr. Herivaux ($100.85). Pet. Ex. 32. However, Petitioner has submitted no invoice or receipts from the visits with Dr. Herivaux, nor has Petitioner submitted any medical records from the visits with Dr. Herivaux.

When requesting costs in a fee application, Petitioner must submit sufficient documentation to substantiate the costs requested. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009) (affirming the special master's refusal to grant costs for which no documentation was provided); *Ceballos v. Sec'y of Health & Human Servs.*, 2004 WL 784910 at *13 (Fed. Cl. Mar. 25, 2004) (stating that in the absence of adequate documentation, costs may not be reimbursed). Petitioner carries the burden to demonstrate that both the fees expended and costs incurred in a given case are reasonable, which requires proof of the fees and costs incurred. Failure to provide documentation for a claimed cost will result in the denial of that cost. *Wilcox v. HHS*, No. 90-991V, 1997 WL 101572 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). For this reason, the undersigned denies Petitioner's costs associated with Dr. Herivaux.

Even assuming proper documentation of Petitioner's visits with Dr. Herivaux was submitted, these costs would not be compensable under § 300aa-15(e) because, as noted above, the costs associated with medical treatment, including emotional or behavioral therapy, are properly included within the compensation provided to Petitioner under § 300aa-15(a). Just as with Mr. Buckner, Petitioner saw Dr. Herivaux for medical treatment, and Dr. Herivaux treated Petitioner with prescribed medication; these costs are not compensable as costs of litigation under § 300aa-15(e).

#### 4.  Dr. Greenfield

Petitioner seeks $3,300 in costs for a psychiatrist, Dr. Daniel Greenfield, for telephonic consultation and review of documents in this case. The invoice from Dr. Greenfield reflects that, over a two year span, he engaged in telephone conferences for consultation and review of materials pertaining to this case, sometimes conducting research. Pet. Ex. 31-1 at 25.

Dr. Herivaux and Mr. Buckner were retained because Petitioner failed to work with Dr. Greenfield, indicating that had Petitioner met with Dr. Greenfield, he would have undergone the type of therapy treatment he subsequently received from Dr. Herivaux and Mr. Buckner. Pet. Rep. to Resp. at 8; Pet. Memo. Supp. Costs at 11. The undersigned finds that because Petitioner subsequently saw Dr. Herivaux and Mr. Buckner for therapy sessions,  Dr. Greenfield's role in the case was to provide medical treatment to Petitioner in the form of emotional or behavioral therapy.  Therefore, the costs incurred by Dr. Greenfield in treating Petitioner were compensable under § 300aa-15(a), not § 300aa-15(e).

Even assuming that Dr. Greenfield's services were not secured for the purpose of treating Petitioner, his costs are unreasonable due to his method of billing and the lack of substantiation for the time he expended with respect to the case. On the invoice from Dr. Greenfield, nearly all of the dates of service are periods of many weeks of time, rather than specific dates. Pet. Ex. 31-1 at 25. Due to this billing style, it is not clear how many hours were spent on tasks like phone calls (of which there are presumably many, given that Dr. Greenfield attempted to contact Petitioner several times without success) versus tasks such as reviewing medical records. While there is no requirement for an expert to actually file a report in order to receive compensation, the lack of any documents authored by Dr. Greenfield, combined with Petitioner's failure to work with him, his unfavorable billing style, and Petitioner's utilization of other psychiatrists after Dr. Greenfield, make it unreasonable to award costs for Dr. Greenfield's services, even if he were not a medical treater of Petitioner. For these reasons, the undersigned denies compensation for Dr. Greenfield's fees.

#### 5.  Kincaid Vocational

Petitioner seeks $5,200 in costs for Kincaid Vocational ("Kincaid") for 16 hours spent evaluating Petitioner to determine what effect his mental condition would have on his ability to earn a living. Pet. Ex. 31-1 at 40; Pet. Memo. Supp. Costs at 10.

Certain costs incurred in the service of advancing settlement discussions are reimbursable, so long as they are reasonable. *See Caves v. Sec'y of Health & Human Servs.*, No. 07-443V, 2012 WL 6951286 at *12 (Fed. Cl. Spec. Mstr. Dec. 20, 2012) (awarding costs for life care planner as necessary to adequately assess settlement prospects).  To determine whether an expert's costs are reasonable, the costs must be evaluated in terms of whether it was reasonable for a petitioner to have entered into a particular relationship with an expert. *See Kuperus v. Sec'y of Health & Human Servs.*, No. 01-60V, 2006 WL 3499516 at *3 (Fed. Cl. Spec. Mstr. Nov. 17, 2006).

Kincaid was retained by Petitioner prior to any medical experts and before Petitioner had a psychiatric diagnosis. While the vocational services may have provided information relevant to settlement discussions, this information was sought before Petitioner received a clear diagnosis of his

medical and psychiatric injuries by a medical professional. The undersigned does not condone Petitioner's counsel's *sua sponte* exercise in retaining vocational services prior to obtaining other, more relevant expert evaluations and prior to any finding of entitlement. For these reasons, the undersigned awards half of the requested costs for Kincaid Vocational ($2,600) because the vocational report did inform the settlement discussions, but was sought prior to more crucial information.

### 6. Miscellaneous Costs

Respondent objects to reimbursement of other miscellaneous costs, including charges for utilizing FedEx and the cost of a meal.

Petitioner filed and served all documents and correspondence in this case using FedEx even though there was no requirement that he do so. Pet. Ex. 31. In Petitioner's Reply, Petitioner's counsel justifies the use of FedEx by pointing out that his office was served by a "small, satellite post office" and would utilize more resources for staff to wait to be served than it would cost to use a FedEx dropbox. Pet. Rep. to Resp. at 9.

Petitioner has submitted $900.65 worth of FedEx costs for filing documents with the Court as well as with Respondent. Pet. Ex. 31. After examining Petitioner's summary of attorney expenses and receipts submitted in support of these expenses, the undersigned notes that Petitioner has included FedEx charges from other matters and incorrectly totaled some of the FedEx charges. Several charges are listed on July 21, 2008. The summary of attorney expenses lists three separate charges of $22.27 on July 21, 2008; however, based on the invoices submitted, there are only two charges of $22.27 from this invoice related to this case. Therefore, one of the charges of $22.27 must be deducted from the total amount of FedEx costs sought by Petitioner. Furthermore, in the summary of attorney expenses there is a charge of $17.52 listed on July 21, 2008; however, the invoice reflects that this charge pertains to another matter, not this case. Therefore, the charge of $17.52 also must be deducted from the total amount of FedEx costs sought by Petitioner. Petitioner lists two charges on August 17, 2009, one of which is for $119.87. However, the $119.87 charge is the total amount of FedEx charges for that particular invoice date, containing shipments pertaining to many different matters, not just the present case. Only the $15.34 charged within that particular invoice pertains to this case. Therefore, the charge of $119.87 is deducted from the total amount of FedEx costs sought by Petitioner. These overcharges account for $159.66, bringing the actual costs incurred from FedEx to $740.99.

Plainly, the use of FedEx for filings was more convenient than conventional U.S. Mail. While it is reasonable to expect Petitioner to incur reimbursable postage costs, the use of a courier service like FedEx is not typically reimbursable when used excessively or on a regular basis. *See e.g., Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 407 (1997). Furthermore, a paying client would not pay premium for FedEx if the documents being sent were not time sensitive. It is reasonable to assume Petitioner would have incurred some costs associated with postage utilizing U.S. Mail. However, because it was unreasonable to utilize FedEx for sending all documents associated with the case, the costs actually incurred by Petitioner in using FedEx ($740.99) will be cut in half to reflect a reasonable postage rate.

Finally, Respondent has objected to $70.40 cost of a meal while in Washington, D.C. to attend a settlement conference in for the case. The cost of this meal is reduced by $22.00, the amount

expended on alcohol. The remainder of the cost associated with this meal, $48.40, is awarded to Petitioner's counsel in light of the fact that on balance, Petitioner's attorney requested very few expenditures of this sort over the lifespan of the case.

Respondent does not challenge Petitioner's counsel's request of costs for medical records, travel,[7] court reporting, a third party attorney, copying, and process service. The undersigned has determined these costs are reasonable and accordingly will be reimbursed.

## IV.    SUMMARY OF AWARDED COSTS

### 1.  Attorneys' Fees

The undersigned awards $95,000.00 to Petitioner's counsel for attorney's fees, as stipulated to by the parties. Pet. Am. Mot. Costs at 2; Pet. Memo. Supp. Costs at 1.

### 2.  Attorney's Costs

| Expense | Amount Requested | Deductions | Amount Awarded |
|---|---|---|---|
| Medical records | $1,045.00 | | $1,045.00 |
| Travel | $896.43 | $22.00 | $874.43 |
| Court reporting | $1,871.60 | | $1,871.60 |
| Mr. Frederic Abramson, Esq. | $175.00 | | $175.00 |
| Kincaid Vocational | $5,200.00 | $2,600 | $2,600 |
| Dr. Daniel Greenfield | $3,300.00 | $3,300.00 | $0 |
| Dr. Marcel Kinsbourne | $11,600.00 | $4,365.00 | $7,235.00 |
| Copying | $543.67 | | $543.67 |
| Process Service | $839.45 | $0.95[8] | $838.50 |
| FedEx | $900.65 | $530.15 | $370.50 |
| | | | |
| **Total Requested** | $26,371.80 | **Total Awarded** | $15,553.70 |

The undersigned awards $15,553.70 to Petitioner's counsel for attorneys' costs.

### 3.  Petitioner's Costs

| Expense | Amount Requested | Deductions | Amount Awarded |
|---|---|---|---|

---

[7] Petitioner's counsel traveled to Washington, D.C. on May 17, 2012 for the purpose of settlement discussions. Pet. Ex. 31 at 1. Both parties met with Special Master Golkiewicz regarding the case on May 18, 2012 to facilitate settlement discussions. *See* Joint Status Report, May 1, 2012.

[8] Petitioner's counsel incorrectly listed one of the charges for Target Research as $95.95. The invoice indicates the total for this particular entry was $95.00, hence the deduction of $0.95.

| Dr. George Buckner | $760.00 | $760.00 | $0 |
| Dr. James Herivaux | $2,335.00 | $2,335.00 | $0 |
| Travel to Dr. Herivaux | $100.85 | $100.85 | $0 |
| Travel to Dr. Buckner | $25.00 | $25.00 | $0 |
| | | | |
| **Total Requested** | $3,220.85 | **Total Awarded** | $0 |

The undersigned awards none of the Petitioner's requested personal costs.

## V.        CONCLUSION

For the reasons explained above, the undersigned finds that an award of attorneys' fees and partial costs is appropriate in this case. Petitioner's counsel is awarded fees and costs as follows:

**A check made payable jointly to Petitioner and to Petitioner's counsel, Mr. John F. McHugh, in the amount of $110,553.70.**

In the absence of a timely filed motion for review filed pursuant to Appendix B of the Rules of the U.S. Court of Federal Claims, the clerk of the court shall enter judgment in accordance herewith.[9]

**IT IS SO ORDERED.**

s/Lisa D. Hamilton-Fieldman
Lisa D. Hamilton-Fieldman
Special Master

---

[9] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. *See* Vaccine Rule 11(a).